# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SIERRA CONCRETE DESIGN, INC. | ) | Chapter 7 |
| TREVI ARCHITECTURAL, INC., | ) | |
| | ) | Case No. 08-12029 (CSS) |
| Debtors. | ) | |
| | ) | Jointly Administered |

### SETTLEMENT AGREEMENT AND FINAL RESOLUTION
### OF LIENS AND CLAIMS OF TEXTRON FINANCIAL CORPORATION

This Settlement Agreement and Final Resolution of Liens and Claims of Textron Financial Corporation (the "Settlement Agreement") is entered into by and between Jeoffrey L. Burtch, Esquire, the Chapter 7 Trustee (the "Trustee") for the estates of Sierra Concrete Design, Inc. and Trevi Architectural, Inc., and Textron Financial Corporation ("Textron" and together with the Trustee, the "Parties") with reference to the following facts and recitals:

WHEREAS, on or about April 14, 2008, Textron filed a UCC-1 financing statement, numbered 20081303203, against Trevi Architectural, Inc. ("Trevi") with the Delaware Secretary of State (the "Trevi Financing Statement");

WHEREAS, on or about April 14, 2008, Textron filed a UCC-1 financing statement, numbered 20081303120, against Sierra Concrete Design, Inc. ("Sierra") with the Delaware Secretary of State (the "Sierra Financing Statement" together with the Trevi Financing Statement, the "UCC Financing Statements");

WHEREAS, on or about June 19, 2008, Debtors entered into a Loan and Security Agreement (the "Loan and Security Agreement") with Textron;

WHEREAS, under the Loan and Security Agreement, the Debtors were jointly and severally, directly, and primarily liable to Textron for all obligations arising out of or related to

6579977/

the Loan and Security Agreement and each of the Debtors had waived any right to assert against Textron any legal or equitable defenses, including setoff, counterclaims or claims that such Debtor individually may have then had, or have at any time as against;

WHEREAS, the UCC Financing Statements perfected Textron's liens ("Textron's Liens") in the Debtors' accounts receivable, chattel paper, documents, inventory, investment property, instruments (including promissory notes,), all goods (except goods covered by certificates of title, and expressly excluding any equipment that is restricted from encumbrances), and all products and proceeds of the foregoing, in any form, including insurance proceeds and claims against third parties for loss of or damage to any or all of the foregoing;

WHEREAS, on August 29, 2008 (the "Petition Date"), the Debtors each filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by and through which the Debtors sought relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, as of the Petition Date, the Debtors were jointly and severally obligated to Textron in the amount of $1,200,468.05;

WHEREAS, on the Petition Date, the Trustee was appointed as Chapter 7 Trustee to administer the Sierra Chapter 7 estate (the "Sierra Estate") and the Trevi Chapter 7 estate (the "Trevi Estate" collectively with the Sierra Estate, the "Estates");

WHEREAS, according to the Debtors' respective schedules, Sierra had $82,917.18 in its bank accounts (the "Sierra Accounts") as of September 4, 2008, and Trevi had $118,398.25 in its bank accounts (the "Trevi Accounts") as of September 8, 2008;

WHEREAS, during the chapter 7 cases, the Trustee filed three sale motions, (collectively the "Sale Motions") with respect to various assets of the Debtors. [Docket Nos. 54, 59, and 62];

6579977/

WHEREAS, on October 20, 2008, the Court approved the sale of certain Sierra assets for $115,000.00 (the "Sierra Asset Sale") [D.I. 94]. Sierra equipment sold in the Sierra Asset Sale included five trucks (VIN# 1GCHC23U85F944587; 1GCHC23U26F140321; 1GDKC34J6XF057908; 1GDKC34J6YF500768; and 1GCHC29U54E90422, collectively the "Sierra Trucks") and four Carson trailers (the "Sierra Trailers");

WHEREAS, Sierra intellectual property sold in the Sierra Asset Sale (the "Sierra Intellectual Property") included: any intellectual property relating to the Turner-Terranea Project; any intellectual property relating to the FMI Project; the Sierra website and any intellectual property associated therein; any intellectual property used in the Sierra business (name, brand, CAD drawings); and any intellectual property connected to Sierra property purchased through the Sierra Asset Sale;

WHEREAS, on October 20, 2008, the Court approved the sale of certain Trevi assets for $31,000.00 (the "Trevi Asset Sale") [D.I. 95]. Trevi equipment sold in the Trevi Asset Sale included one Mitsubishi FM617 truck (VIN# JW6DEM1E8XM000631, the "Trevi Truck") and a Monon trailer (the "Trevi Trailer");

WHEREAS, Trevi intellectual property sold in the Trevi Asset Sale (the "Trevi Intellectual Property") included the name "Trevi Architectural" and Trevi's website domain name;

WHEREAS, on December 17, 2008, Textron filed a proof of claim against the Sierra Estate asserting a claim in the amount of $1,200,468.50, plus interest and reasonable legal fees and expenses (the "Sierra Claim") secured against all assets of the Debtor.

WHEREAS, on December 17, 2008, Textron filed a proof of claim against the Trevi Estate asserting a claim in the amount of $1,200,468.50 (the "Trevi Claim") secured against all assets of the Debtor.

WHEREAS, on August 27, 2009, Textron and the Trustee entered into the Agreement for Interim Distribution to Textron Financial Corp. (the "Distribution Agreement");

WHEREAS, on September 25, 2009, the Court entered an order approving the Distribution Agreement [D.I. 207];

WHEREAS, pursuant to the Distribution Agreement, the Trustee distributed $460,000.00 to Textron in partial satisfaction of Textron's secured claims against the Estates;

WHEREAS, from time to time, the Trustee paid to Textron additional distributions totaling $299,798.58 from the Estates in partial satisfaction of the Trevi Claim and the Sierra Claim. To date, Textron has received $759,798.58 as partial satisfaction of the Trevi Claim and the Sierra Claim;

WHEREAS, to date, Textron has represented to the Trustee that Textron has incurred and paid legal fees and expenses in the aggregate amount of $113,837.05;

WHEREAS, pursuant to the Distribution Agreement, Textron and the Trustee acknowledged that Textron has a timely perfected security interest in the Debtors' accounts receivable, chattel paper, documents, inventory, investment property, instruments (including promissory notes,) all goods (except goods covered by certificates of title, and expressly excluding any equipment that is restricted from encumbrances), and all products and proceeds of the foregoing, in any form, including insurance proceeds and claims against third parties for loss of or damage to any or all of the foregoing;

6579977/

WHEREAS, pursuant to the Distribution Agreement, Textron and the Trustee agreed and acknowledged that Textron did not perfect Textron's liens in any of the Debtors' deposit accounts in excess of $11,266.22, and the Debtors' motor vehicles that require a certificate of title under applicable non-bankruptcy law;

WHEREAS, pursuant to the Distribution Agreement, Textron asserted that it has a perfected security interest in: (i) up to $11,266.22 of the money in the Debtors' deposit accounts on the Petition Date; (ii) all of the Debtors' intellectual property and (iii) each of Debtors' trailers and forklifts, and (iv) the Debtors' letter-of-credit rights, and the Trustee asserted that Textron does not have a perfected security interest in: (w) any of the Debtors' deposit accounts; (x) goods covered by a certificate of title (including certain vehicles and equipment), (y) certain intellectual property, and (z) the Debtors' letter-of-credit rights (collectively, the "Disputed Collateral") [D.I. 207];

WHEREAS, the Parties have informally exchanged information, including limited informal discovery, and legal theories concerning any and all remaining disputes between the Parties;

WHEREAS, the Parties have determined to resolve any disputes relating to the Disputed Collateral and any remaining proceeds thereof on the terms and subject to the conditions set forth in this Settlement Agreement; and

NOW, THEREFORE, the Parties agree as follows:

1. The recitals set forth above are incorporated herein by reference.

2. The Trustee agrees to pay to Textron, and Textron agrees to accept, the sum of $14,500.00 (the "Settlement Amount") in full and complete satisfaction of any claims secured by

6579977/

the proceeds of any collateral subject to Textron's Liens, including the Disputed Collateral, after entry of a final order approving this Settlement Agreement.

3. The Settlement Amount shall be paid as follows:

   a. $7,250.00 of the Settlement Amount shall be paid from monies held by the Sierra Estate;

   b. $7,250.00 of the Settlement Amount shall be paid from monies held by the Trevi Estate;

4. Upon entry of a final order approving this Settlement Agreement and payment of the Settlement Amount to Textron, all secured claims of Textron shall be deemed satisfied.

5. Upon entry of a final order approving this Settlement Agreement and payment of the Settlement Amount to Textron, Textron shall retain a deficiency claim. Specifically, Textron shall have an allowed pre-petition, unsecured, non-priority claim against each of the Trevi Estate and the Sierra Estate in the amount of $540,006.97.

6. Any order approving this Settlement Agreement shall provide specifically provide for these allowed claims.

7. Upon payment of the Settlement Amount, all remaining monies held by the Trustee in the Estates shall be deemed free and clear of all liens, interests, and encumbrances.

8. This Settlement Agreement is subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). After the Parties to this Settlement Agreement have executed this document, the Trustee will proceed to file motion papers in the Bankruptcy Court to obtain court approval of the Settlement Agreement.

9. Within fourteen days after entry of a final order approving this Settlement Agreement, the Trustee shall make pay the Settlement Amount due pursuant to this Settlement

6579977/

Agreement by check, payable to the order of "Textron Financial Corporation" and shall be delivered to Textron in care of its counsel at the following address:

>Jeffrey R. Waxman, Esquire
>MORRIS JAMES LLP
>500 Delaware Ave., Ste. 1500
>Wilmington, DE 19801

10. Each Party represents and warrants that it owns and has not assigned or otherwise transferred to any other person or entity all such Party's rights and claims as are being altered or otherwise affected by this Settlement Agreement.

11. The Parties acknowledge that this Settlement Agreement is a compromise of disputed claims, and that neither admits, and each expressly denies, any liability on its part.

12. The Parties represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Settlement Agreement or otherwise, other than as specifically stated in this Settlement Agreement.

13. The Parties further declare that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel (for whose expense each shall be solely responsible), if any, and that they have had a reasonable period of time to consider this Settlement Agreement and, if so desired, consult with counsel.

14. The Parties agree that each Party and its counsel have reviewed this Settlement Agreement and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are

6579977/

to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

15. The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

16. This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

17. No modification of this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Parties.

18. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

19. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws of the State of Delaware. Each of the Parties hereby irrevocably consents to the jurisdiction of this Court with respect to any action to enforce the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

20. This Settlement Agreement may be executed in one or more counterparts, including by email and facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

21. Each person signing this Settlement Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this

6579977/

Settlement Agreement on behalf of such Party and to bind his/her respective client(s) to the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have each approved and executed this Settlement Agreement.

_____
Jeffrey R. Waxman, Esquire (De. No. 4159)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801

Attorneys for Textron Financial Corporation

Dated: 7/12/13

_____
Adam Singer, Esq. (De. No. 2472)
COOCH AND TAYLOR PA
1000 West Street, 10th Floor
Wilmington, DE 19801

Attorneys for Jeoffrey L. Burtch,
Chapter 7 Trustee

Dated: 7-12-13

6579977/